The Honorable John C. Coughenour

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| KRISTIN BAIN,<br><br>                              Plaintiff,<br><br>v.<br><br>METROPOLITAN MORTGAGE GROUP, INC., INDYMAC BANK, FSB; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS; REGIONAL TRUSTEE SERVICE; FIDELITY NATIONAL TITLE; and Doe Defendants 1 through 20, inclusive,<br><br>                              Defendants. | No. 2:09-cv-0149-JCC<br><br>DECLARATION OF JEFFRY M. QUICK IN SUPPORT OF MOTION TO SUBSTITUTE FEDERAL DEPOSIT INSURANCE CORPORATION, AS RECEIVER FOR INDYMAC BANK, F.S.B., IN THE PLACE AND STEAD OF INDYMAC BANK, F.S.B. |

I, Jeffry M. Quick, declare as follows:

1. I am presently employed by the Federal Deposit Insurance Corporation ("FDIC"), as a Resolutions and Receiver Specialist, in the Division of Resolutions and Receiverships. The facts stated herein are within my personal knowledge, and if called as a witness I could and would testify competently thereto.

2. On July 11, 2008, the Office of Thrift Supervision ("OTS") closed IndyMac Bank, F.S.B. (the "failed institution") and appointed the FDIC as its Receiver ("FDIC-Receiver") pursuant to 12 U.S.C. § 1464(d)(2)(A) and § 1821(c)(5). The FDIC-Receiver is the successor-in-interest to the failed institution, assuming all rights, titles, powers, privileges, and operations of the failed institution. The FDIC-Receiver was appointed for the purpose of liquidating the

DECLARATION OF JEFFRY M. QUICK IN SUPPORT OF
MOTION TO SUBSTITUTE FDIC - 1
No. 2:09-cv-0149-JCC

FOSTER PEPPER PLLC
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299
PHONE (206) 447-4400 FAX (206) 447-9700

1  liabilities of the failed institution. This purpose also includes the administration of claims filed
2  by creditors of the failed institution.
3       3.       Attached as **Exhibit A** to my declaration is a true and correct copy of the July 11,
4  2008 Order from the Office of Thrift Supervision that appointed the FDIC as Receiver for
5  IndyMac Bank, F.S.B.
6       I declare under penalty of perjury under the laws of the state of Washington that the
7  foregoing is true and correct.
8
9       Executed this 24th day of April, 2009.
10
11
12                                                          _____
                                                            Jeffry M. Quick

DECLARATION OF JEFFRY M. QUICK IN SUPPORT OF
MOTION TO SUBSTITUTE FDIC - 2
No. 2:09-cv-0149-JCC

FOSTER PEPPER PLLC
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299
PHONE (206) 447-4400  FAX (206) 447-9700

## OFFICE OF THRIFT SUPERVISION

## Pass-Through Receivership Of A Federal Savings Association Into A De Novo Federal Savings Association That is Placed Into Conservatorship With the FDIC

Date: July //, 2008

Order No.: 2008-24

The Director of the Office of Thrift Supervision ("OTS"), or his designee, in cooperation with the Federal Deposit Insurance Corporation ("FDIC"), has determined: (1) to appoint the FDIC as receiver for the savings association specified below ("OLD THRIFT"); (2) to approve the FDIC's request for the issuance of a new federal mutual savings association charter ("NEW THRIFT") as a successor to OLD THRIFT; (3) to approve the transfer of such assets and liabilities of OLD THRIFT to its successor NEW THRIFT, as the FDIC has determined to be appropriate; and (4) to appoint the FDIC as conservator of NEW THRIFT. Collectively, numbers 2 through 4 of the foregoing are referred to herein as the "APPLICATIONS."

"OLD THRIFT," refers to:

| Name | Location | OTS No. |
|---|---|---|
| IndyMac Bank, F.S.B. | Pasadena, California. | 03970 |

## I. GROUNDS FOR ACTIONS TAKEN IN THIS ORDER:

## RECEIVERSHIP; GROUNDS FOR APPOINTMENT OF FDIC AS RECEIVER FOR OLD THRIFT

The Director, or his designee, based upon the administrative record finds and determines that:

OLD THRIFT has insufficient cash and liquid assets convertible to cash necessary to pay the expected withdrawal demands of its depositors. OLD THRIFT has suffered significant deposit outflows, exceeding $1 billion since June 26, 2008, in part because of adverse publicity. Further, because OLD THRIFT is not well capitalized, it cannot renew its large volume of brokered deposits, which will create an additional deposit outflow. In addition, OLD THRIFT has limited and diminishing liquidity sources available to it. There has been significant disruption in the markets for the types of assets, mortgage backed securities and mortgage servicing rights, held by OLD THRIFT. Therefore, those

assets that are not already subject to liens may not be marketable or only can be sold at prices that would result in OLD THRIFT failing to meet its capital requirements. Moreover, OLD THRIFT's mortgage servicing rights are the major source of OLD THRIFT's current earnings. In addition, the consequences of OLD THRIFT's top-tier holding company's July 7, 2008 public disclosure of adverse information, and the curtailment of forward mortgage lending and resulting downsizing, place OLD THRIFT in a precarious position and OLD THRIFT has been unable to find anyone who is willing and able to invest sufficient capital to alleviate its problems.

OLD THRIFT has suffered losses amounting to approximately $842 million from the third quarter of 2007 to the first quarter of 2008 and projects to report another $354 million loss for the second quarter of 2008. OLD THRIFT is in an unsafe and unsound condition as a result of its severe liquidity strain, deteriorating asset quality, continuing significant negative operating earnings, and declining capital with no realistic prospects for raising capital to ensure that it can repay all of its liabilities, including deposits.

OLD THRIFT has been unsuccessful in its attempts to find investors who are willing and able to recapitalize OLD THRIFT, given OLD THRIFT's current financial condition, ongoing deposit outflows, lack of liquidity, and continued asset quality deterioration. Further, OLD THRIFT projected that it would be undercapitalized as of June 30, 2008. In addition to other asset write-down's which OLD Thrift should be taking, OLD THRIFT is likely to be unable to meet its depositors' demands and other obligations in the normal course of business, and therefore, OLD THRIFT should immediately recognize additional losses on assets held for sale. The losses OLD THRIFT should recognize will result in OLD THRIFT being classified as undercapitalized. Moreover, because efforts to raise capital have proven unsuccessful, there is no reasonable prospect of OLD THRIFT becoming adequately capitalized without Federal assistance.

Therefore, the Director, or his designee, has concluded that:

(a) OLD THRIFT is likely to be unable to pay its obligations or meet its depositors' demands in the normal course of business because it does not have sufficient liquid assets to fund expected withdrawals;

(b) OLD THRIFT is in an unsafe and unsound condition to transact business due to its lack of capital and its illiquid condition;

(c) OLD THRIFT is undercapitalized as defined in section 38(b) of the FDIA, and has no reasonable prospect of becoming adequately capitalized as defined in section 38(b) of the FDIA.

The Director, or his designee, therefore, has determined that grounds for the appointment of a receiver for OLD THRIFT exist under section 5(d)(2) of the Home Owners' Loan Act ("HOLA"), 12 U.S.C. § 1464(d)(2) and section 11(c)(5) of the FDIA, 12 U.S.C. § 1821(c)(5).

### TRANSFER INTO A NEW FEDERAL CHARTER: GROUNDS FOR ISSUANCE OF NEW FEDERAL CHARTER AND APPROVAL OF TRANSFER OF ASSETS AND LIABILITIES OF OLD THRIFT TO NEW THRIFT

The FDIC, as receiver of OLD THRIFT, has applied for authority to organize a new Federal mutual savings association, NEW THRIFT, that is to take over such assets and such liabilities of OLD THRIFT as the FDIC has determined to be appropriate, pursuant to section 11(d)(2)(F)(i) of the FDIA, 12 U.S.C. §1821(d)(2)(F)(i). The FDIC would insure the accounts of NEW THRIFT.

The Director, or his designee: (i) has considered the factors set forth in section 5(e) of HOLA, 12 U.S.C. § 1464(e), with regard to granting a new federal savings association charter, has determined that the charter should be issued, that NEW THRIFT is authorized to transact business as a savings association, and that the charter and bylaws to be issued for NEW THRIFT are in a form consistent with the material provisions of the applicable regulations; and (ii) has considered the factors set forth in section 18(c) of the FDIA, 12 U.S.C. § 1828(c), and 12 C.F.R. § 563.22 with respect to the acquisition of certain assets and assumption of certain liabilities of OLD THRIFT by NEW THRIFT. Immediate action is necessary given the seriously adverse financial condition of OLD THRIFT and in order to permit NEW THRIFT to acquire certain assets and assume certain liabilities of OLD THRIFT and continue to serve OLD THRIFT's community and customers.

For the foregoing reasons, the Director, or his designee, has determined that, pursuant to 12 C.F.R. §§ 563.22 (e) and 543.7-1, public notice of the APPLICATIONS shall not be required. In addition, the Director, or his designee, finds that OTS must act immediately in order to prevent the probable default of OLD THRIFT. Therefore, the publication of notice required by section 18(c)(3) of the FDIA, the reports on the competitive factors of the acquisition required by section 18(c)(4) of the FDIA, and the delayed consummation required by section 18(c)(6) of the FDIA, shall be dispensed with. Accordingly, NEW THRIFT may immediately acquire the assets and assume the liabilities determined to be appropriate by the FDIC.

### CONSERVATORSHIP:

### GROUNDS FOR APPOINTMENT OF FDIC AS CONSERVATOR FOR NEW THRIFT

The FDIC has indicated that, immediately upon the completion of the organization of NEW THRIFT (which will be federally chartered) and completion of the transfer of the aforesaid assets and liabilities of OLD THRIFT to NEW THRIFT, it will, in the exercise of its authority to act as the board of directors of NEW THRIFT pursuant to section 11(d)(2)(B) of the FDIA, 12 U.S.C. § 1821(d)(2)(B), consent to the OTS

appointing the FDIC as conservator for NEW THRIFT. Moreover, NEW THRIFT will have virtually the same capital and liquidity as OLD THRIFT had immediately prior to the appointment of a receiver for OLD THRIFT and, therefore, the grounds set forth in Section I above for appointment of the receiver for OLD THRIFT, are also applicable as grounds for the appointment of a conservator for NEW THRIFT.

## II. ACTIONS ORDERED OR APPROVED:

### APPOINTMENT OF A RECEIVER

The Director, or his designee, hereby appoints the FDIC as receiver for OLD THRIFT, for the purpose of liquidation, pursuant to section 5(d)(2) of HOLA, 12 U.S.C. §1464(d)(2), and section 11(c)(6)(B) of the FDIA, 12 U.S.C. § 1821(c)(6)(B).

### ISSUANCE OF A FEDERAL CHARTER AND APPROVAL OF THE PASS-THROUGH OF ASSETS AND LIABILITIES

The Director, or his designee, hereby approves: (1) the application of the FDIC to organize NEW THRIFT as a federal mutual savings association (and hereby authorizes the issuance of an appropriate charter and bylaws for NEW THRIFT in form and content approved by the Chief Counsel's Office); (2) the transfer of such assets and liabilities of OLD THRIFT to its successor, NEW THRIFT, as the FDIC has determined to be appropriate; and (3) the retention of the home and branch offices of OLD THRIFT by its successor, NEW THRIFT. Prior to the appointment or election of a board of directors for NEW THRIFT, the FDIC may, in addition to any other powers granted by applicable law, exercise the powers of the board of directors pursuant to section 11(d)(2)(B) of the FDIA, 12 U.S.C. § 1821(d)(2)(B).

### APPOINTMENT OF A CONSERVATOR FOR NEW THRIFT

The Director, or his designee, hereby appoints the FDIC as conservator for NEW THRIFT pursuant to sections 5(d)(2)(A) and (E) of the HOLA, 12 U.S.C. §§ 1464(d)(2)(A), 1464(d)(2)(E), effective upon receipt of the consent of NEW THRIFT to such appointment. That consent must be contained in a resolution of its board of directors issued by the FDIC in exercise of its power, as the organizer of NEW THRIFT, to act as its interim board of directors pursuant to section 11(d)(2)(B) of the FDIA, 12 U.S.C. § 1821(d)(2)(B).


5                               OTS ORDER No.: 2008-24

## DELEGATION OF AUTHORITY TO ACT FOR OTS

The Director, or his designee, hereby authorizes the OTS West Region Director, or his designee, and the Deputy Chief Counsel for the Business Transactions Division of the Chief Counsel's office, or his designee, to: (1) certify orders; (2) sign, execute, attest or certify other documents of OTS issued or authorized by this Order; (3) designate the person or entity that will give notice of the appointment of a receiver for OLD THRIFT and serve OLD THRIFT with a copy of this Order pursuant to 12 C.F.R. § 558.2; (4) designate the person or entity that will give notice of the appointment of a conservator for NEW THRIFT and serve NEW THRIFT with a copy of this Order pursuant to 12 C.F.R. § 558.2; and (5) perform such other functions of OTS necessary or appropriate for implementation of this Order. All documents to be issued under the authority of this Order must be first approved, in form and content, by the Chief Counsel's Office. In addition, the Director, or his designee, hereby authorizes the Deputy Chief Counsel for the Business Transactions Division of the Chief Counsel's office, or his designee, to make any subsequent technical corrections, that might be necessary, to this Order or any documents issued under the authority of this Order.

By Order of the Director of OTS, effective July _11_, 2008.

_____
John M. Reich
Director