THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| KRISTIN BAIN, <br><br>  Plaintiff, <br><br> v. <br><br> METROPOLITAN MORTGAGE GROUP INC., INDYMAC BANK, FSB; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS; REGIONAL TRUSTEE SERVICE; LENDER PROCESSING SERVICES; and Doe Defendants 1 through 20, inclusive, <br><br> Defendants. | Case No. C09-0149-JCC <br><br> ORDER |

This matter comes before the Court on Defendant Lender Processing Services' Motion for Summary Judgment (Dkt. No. 73), Plaintiff Kristin Bain's Response (Dkt. No. 48), Defendant's original Reply (Dkt. No. 62), Plaintiff's Supplemental Response (Dkt. No. 72), and Defendant LPS' Reply (Dkt. No. 79), as well as all declarations and exhibits.[1] Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby GRANTS the motion for the reasons explained herein.

---

[1] The Court issued a modified briefing schedule in consideration of ongoing discovery; based on the stipulation of the parties, Plaintiff was given an opportunity to supplement her Response after conducting a relevant deposition. (*See* Dkt. Nos. 55, 56.) Then the Court moved the trial date, struck the noting dates on two pending motions for summary judgment and invited the parties to reopen the motions later, if necessary. (Dkt. No. 71.) Defendant LPS immediately re-filed its motion. (Dkt. No. 73.) It was acceptable for Plaintiff to rest on her previously filed responsive briefing, and the Court assumes she did so.

ORDER
PAGE - 1

## I.  BACKGROUND

Plaintiff, a young woman with "severe ADD," purchased a condominium in Everett, Washington, and then defaulted on her mortgage payments. After the initiation of non-judicial foreclosure proceedings, she filed suit in Washington state court, alleging that Defendants—a group of lending organizations, banks, and foreclosure service providers—committed common-law torts and violations of federal and Washington statutes in connection with their issuance and administration of a deed of trust, and their subsequent foreclosure, on her home. (Compl. (Dkt. No. 2 at 49 *et seq.*) Defendants removed the matter to this Court. (Notice of Removal 1–2 (Dkt. No. 1).)[2]

The instant motion for summary judgment concerns only one Defendant: Lender Processing Services ("LPS"). LPS "process[es] the necessary paperwork to pursue non-judicial foreclosure on behalf of its servicer and lender clients." (Allen Decl. (Dkt. No. 74 at 1).) LPS had contracts with Defendants IndyMac Bank (now IndyMac Federal Bank) and Mortgage Electronic Registration Systems ("MERS"). Under the contract with MERS, LPS[3] employees were "appointed as assistant secretaries and vice presidents of [MERS] and, as such, are authorized to . . . execute any and all documents necessary to foreclose upon the property securing any mortgage loan registered on the MERS system . . . including but not limited to (a) substitution of trustee on Deeds of Trust . . ." (*Id.* at 12.) Similarly, LPS had separate contractual authority to execute documents as signing officers of IndyMac. (*Id.* at 19.) LPS

---

[2] Removal jurisdiction was predicated on the federal questions in the complaint, as well as the fact that IndyMac Bank, FSB, one of the Defendants, went into receivership in 2008 with the Federal Deposit Insurance Corporation ("FDIC") appointed as its receiver and successor in interest. Any civil suit in which the FDIC, in any capacity, is a party is "deemed to arise under the laws of the United States." 12 U.S.C. § 1819(b)(2)(A).

[3] LPS was formerly a subsidiary of Fidelity National Foreclosure Solutions, Inc., ("FSI"), and is now a spin-off company. (*See* Dkt. No. 21.) FSI is named in the relevant contracts, and was originally named as a party. The Court granted Plaintiff's motion to substitute LPS in place of FSI. (Order (Dkt. No. 29).) Where necessary in this Order, the Court thus simply substitutes LPS for FSI.

ORDER
PAGE - 2

1 maintains that it acted as an agent for these companies, pursuant to express contractual
2 relationships that allowed its employees to sign as executive officers of MERS and IndyMac.

3     LPS's involvement with the foreclosure process on Plaintiff's home was as follows.
4 Bethany Hood, an LPS employee, signed an "Assignment of Deed of Trust" on behalf of
5 MERS, which transferred MERS's beneficial interest in Plaintiff's loan to IndyMac. (Dkt. No.
6 51 at 2; Dkt. No. 74 at 7.) Christina Allen, another LPS employee, signed an "Appointment of
7 Successor Trustee" on behalf of IndyMac, which appointed Regional Trustee Service as the
8 successor trustee under the deed of trust. (Dkt. No. 74 at 15; Dkt. No. 51 at 5.) Next to both
9 signatures in both documents, the LPS employees listed "VP" or "AVP" as their titles—which
10 apparently signified vice president of MERS and assistant vice president of IndyMac. (Resp. 5
11 (Dkt. No. 48).) LPS then sent those documents to Defendant Regional Trustee Service to be
12 recorded. (Mot. 2 (Dkt. No. 73).) Both Bethany Hood and Christina Allen are listed as LPS
13 employees authorized to sign on behalf of IndyMac and MERS. (Dkt. No. 74 at 13, 22.)

14     Plaintiff alleges that Hood and Allen were "actively participating in fraudulently
15 executing documents in connection with this foreclosure sale by making false representations
16 regarding their employment capacity." (Compl. ¶ 2.6 (Dkt. No. 2 at 54).) She also maintains
17 that no one had the authority to foreclose on her loan. (*Id.* at 6; *see also* Resp. 16 (Dkt. No.
18 48).) There are only two claims in the original Complaint against LPS. First, Plaintiff asserts
19 that LPS, along with all Defendants, committed the tort of intentional infliction of emotional
20 distress. (Compl. ¶ 3.6 (Dkt. No. 2 at 56).) Plaintiff also appears to assert a breach of fiduciary
21 or quasi-fiduciary duty against LPS. (*Id.* ¶ 3.8, 3.9 (listing LPS in the body of the paragraphs,
22 but not in the header). In her Response, Plaintiff also asserts that she "can prevail on her claims
23 against Defendant LPS for violations of the Washington Consumer Protection Act," ("CPA")
24 although she did not assert a CPA claim against LPS in her complaint. (*Compare* Resp. 20
25 (Dkt. No. 48) *with* Compl. ¶¶ 3.10, 3.11 (Dkt. No. 2 at 57) (Consumer Protection Act claims
26 asserted only against Metropolitan Mortgage).)

ORDER
PAGE - 3

1 LPS now moves for summary judgment on all claims against it. First, LPS asserts that,
2 at all material times, it was acting as an agent for other Defendants in this case, and is therefore
3 not liable for actions taken within the scope of its authority. (Resp. 2 (Dkt. No. 73).) LPS also
4 asserts, in the alternative, that Plaintiff cannot withstand summary judgment on her other
5 claims, because she cannot prove their essential elements. (*Id.*)

## II. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(c)(2), the Court shall grant summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Summary judgment is appropriate against a nonmoving party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). That is, after the movant has carried its burden of demonstrating that there is no genuine issue of material fact, the burden shifts to the nonmovant, who must present a quantum of evidence such "that a reasonable jury could return a verdict" in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether summary judgment is appropriate, the Court must view the facts in the light most favorable to the non-moving party and draw reasonable inferences in its favor. *Scheuring v. Traylor Bros., Inc.*, 476 F.3d 781, 784 (9th Cir. 2007).

## III. DISCUSSION

### A. Procedural challenges

Plaintiff asserts a few initial procedural challenges, none of which has merit. First, although Plaintiff does not contest that the documents attached as exhibits to declarations in Defendant's Motion were also disclosed to her, she nonetheless complains about the quality of LPS's initial disclosures, and asserts that the redactions in those documents are inappropriate. (Resp. 14 (Dkt. No. 48).) But Plaintiff does not explain how the redacted details would be

1  relevant to the particular challenges brought in this motion. Nor does Plaintiff allege prejudice;
2  nor did she bring a motion to compel at any time; nor did she challenge the redactions before
3  this motion; nor did she, apparently, request *any* supplemental documentary discovery from
4  LPS. (Spoonemore Decl. 2 (Dkt. No. 63).) Plaintiff's discovery challenges are meritless.

5  Plaintiff also asserts that many of the documents used to support LPS's motion are
6  hearsay. She misunderstands the kind of evidence used at summary judgment in the federal
7  system. The challenged documents are authenticated by Greg Allen, the Assistant Vice
8  President for Customer Support at LPS. He alleges that he has personal knowledge of the facts
9  in his declarations, all of which deal with contracts between LPS and its customers, IndyMac
10 and MERS. (Dkt. No. 64 at 1, Dkt. No, 74 at 1.) His declaration of personal knowledge is all
11 that is required to authenticate a document, particularly at summary judgment, when a party
12 need not produce evidence in a form that would be admissible at trial. FED. R. EVID. 901(b)(1).
13 *Block v. City of Los Angeles,* 253 F.3d 410, 418–19 (9th Cir. 2001). Plaintiff's challenges
14 based on alleged evidentiary infirmities are also meritless.

15 **B.     Agency**

16 Defendant first claims that Plaintiff cannot pursue claims against LPS for actions that
17 were within the scope of its authority as an agent for IndyMac and MERS. (Mot. 2 (Dkt. No.
18 73).) In support of this contention, Defendant cites *Davis v. Baufus*, 473 P.2d 192, 193 (Wash.
19 Ct. App. 1970): "[A] complaint against a known agent, acting within the scope of his authority
20 for a disclosed principal, fails to state a claim upon which relief can be granted against the
21 agent." Plaintiff raises an army of arguments against application of this rule to her case, but she
22 misses a vital point, which the Court would be remiss to ignore. *Davis* was a contract case. The
23 rules of agency apply differently when the matter sounds in tort or remedial statute. In fact, "an
24 agent, when sued for its own tortious act, may not avail itself of the immunities of its principal
25 although it may have been acting at the direction of the principal." *Aungst v. Roberts Constr.*
26 *Co., Inc.*, 625 P.2d 167, 168 (Wash. 1981) (citing RESTATEMENT (SECOND) OF AGENCY § 347

ORDER
PAGE - 5

(1958)). Nor is there such immunity for statutory private rights of action, including the Consumer Protection Act. *Id.* at 169. The complaint alleges violations of common-law tort and statutory principles against LPS. The Court cannot, in fidelity to the law of Washington, hold that LPS's agency status alone grants it immunity.

### C. Intentional Infliction of Emotional Distress

In Washington, the tort of outrage[4] requires the proof of three elements: (1) extreme and outrageous conduct, (2) intentional or reckless infliction of emotional distress, and (3) actual result to plaintiff of severe emotional distress. *Kloepfel v. Bokor*, 66 P.3d 630, 632 (Wash. 2003) (citing cases). The first prong requires that the defendant have engaged in behavior "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* (internal punctuation omitted) (citing *Grimsby v. Samson*, 530 P.2d 291 (Wash. 1975) and RESTATEMENT (SECOND) OF TORTS § 46 cmt. d).

The Court finds that LPS did not engage in outrageous conduct. Plaintiff conclusorily argues that she "was entitled to have the foreclosure conducted in conformity with the laws of the State of Washington, and not to be forced into a sale of her home by someone or some entity that did not have the legal authority to do so." (Resp. 19 (Dkt. No. 48).) But she neglects to discuss how *LPS*, particularly, caused her harm. LPS employees signed two papers that changed the ownership on her deed of trust. As far as can be discerned from the evidence before the Court, LPS had no direct contact with Plaintiff whatsoever. LPS's conduct in simply assigning the deed of trust and appointing a successor trustee, in reasonable accordance with contracts with IndyMac and MERS, simply does not "go beyond all possible bounds of decency," and cannot be regarded as "atrocious and utterly intolerable in a civilized

---

[4] "Outrage" and "intentional infliction of emotional distress" are synonyms for the same tort. *Kloepfel v. Bokor*, 66 P.3d 630, 631 n.1 (Wash. 2003).

ORDER
PAGE - 6

1  community." *Kloepfel*, 66 P.3d at 632. Neither can Plaintiff prove the second prong of outrage.
2  The emotional distress complained of must be inflicted intentionally or recklessly. Bad faith or
3  malice is not enough to prove an outrage claim. *Dicomes v. State,* 782 P.2d 1002 (Wash. 1989).
4  Plaintiff has proffered no evidence whatsoever that LPS had the requisite intent. The Court
5  finds as a matter of law that LPS is entitled to summary judgment on Plaintiff's claims of
6  intentional infliction of emotional distress.

7  **D.     Fiduciary Duty**

8  Plaintiff's complaint alleges that "Defendants IndyMac, MERS and [LPS] owed a
9  fiduciary duty or quasi-fiduciary duty to Plaintiff. . . . Defendant Regional Trustee has a
10 fiduciary duty as an alleged trustee under the [Deed of Trust Act]  . . . ."(Compl. ¶ 3.8, 3.9
11 (Dkt. No. 2 at 56).) Although Plaintiff's Complaint only mentioned the Washington Deed of
12 Trust Act against Regional Trustee *alone*, it is apparent from her Responses to LPS's motion
13 for summary judgment—so far as the Court can parse them—that Plaintiff believes that the Act
14 created a fiduciary relationship between LPS and Plaintiff, too.

15 It did not. A deed of trust differs from a standard mortgage because it involves not only
16 a lender and a borrower, but a neutral third party called the trustee. *Kezner v. Landover Corp.*,
17 942 P.2d 1003, 1007 n.9 (1997). Under Washington's Deed of Trust Act ("DTA"), a "trustee"
18 is the person designated as the trustee in the deed of trust or appointed under the statute; the
19 trustee holds an interest in the titled to the borrower's property on behalf of the lender. WASH.
20 REV. CODE 61.24.005(13); *Kezner*, 942 P.2d at 1007 n.9. It is true that the *trustee* bears an
21 "exceedingly high" fiduciary duty towards both the mortgagee and mortgagor. *Cox v.*
22 *Helenius*, 693 P.2d 683, 686 (Wash. 1985). But Plaintiff concedes that Regional Trustee was
23 the trustee on the deed of trust. (Resp. 11 (Dkt. No. 48).) Defendant LPS's employees
24 "execute[d] documents *at the behest* of the foreclosing trustee." (Supp. Resp. 8 (Dkt. No. 66)
25 (emphasis added).)  Nowhere in *any* of her pleading papers or any of the documents on file
26 does Plaintiff produce a scintilla of evidence that *LPS* was a trustee, such that its actions would

ORDER
PAGE - 7

1  be covered by the duties imposed by the DTA. Plaintiff forgets that, in order to incur a
2  fiduciary duty, the particular party must, first, be a fiduciary. Such duties are not free-floating.
3  Plaintiff has not carried her burden in demonstrating that there is a material issue of fact as to
4  whether LPS had a fiduciary duty toward Plaintiff.[5] *Anderson*, 477 U.S. at 248.

5  Plaintiff also made no argument to show that LPS was covered by a quasi-fiduciary
6  obligation. She cites no cases for this proposition. The Court finds that, based on the
7  circumstances of this case, LPS and Plaintiff were not in a "relationship [that] involve[d] more
8  trust and confidence than is true of ordinary arm's length dealing." *Tokarz v. Frontier Fed.*
9  *Sav. and Loan Ass'n*, 456, 656 P.2d 1089 (Wash. Ct. App. 1982) (citing *Hutson v. Wenatchee*
10 *Fed. Sav. & Loan Ass'n,* 588 P.2d 1192 (Wash. Ct. App. 1978)).

11 Plaintiff finally attempts to resist summary judgment by arguing that there is an issue of
12 fact as to the precise nature of the relationship between LPS and the other Defendants. (Resp.
13 13–19 (Dkt. No. 48).) But Plaintiff neglects to elucidate why this information would be
14 relevant to the fundamental question of *whether LPS was a trustee*, such that a duty toward
15 Plaintiff would arise under the Washington Deed of Trust Act. "As to materiality, the
16 substantive law will identify which facts are material. Only disputes over facts that might
17 affect the outcome of the suit under the governing law will properly preclude the entry of
18 summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted."
19 *Anderson*, 477 U.S. at 248. There is no genuine issue of *material* fact. Defendant carried its
20 burden. Summary judgment is therefore granted as to Plaintiff's DTA claims.

21 //

---

[5] Nor did LPS exceed its authorities as an agent for the trustee. An agent may perform "mere ministerial acts" relating to a foreclosure. *Buse v. First Am. Title Co.*, C08-0510-MJP, 2009 WL 1543994, at *3 (W.D. Wash. May 29, 2009) (citing cases). That is precisely what LPS did here in assigning the deed of trust and appointing a successor trustee. Plaintiff did not allege that these actions involved discretion or judgment, and it is apparent from the record that they were simple preparation and dissemination of documents.

ORDER
PAGE - 8

### E.    Consumer Protection Act Claims

For the first time in her Response, Plaintiff asserts Washington Consumer Protection Act ("CPA") claims against LPS. (Resp. 20 (Dkt. No. 48).) Even if the Court were to treat this unpleaded issue as properly presented, Plaintiff could not resist summary judgment by relying on it. The CPA prohibits "unfair or deceptive acts in the conduct of any trade or commerce." WASH. REV. CODE 19.86.020. To prevail in a private CPA action, a plaintiff must establish five distinct elements: (1) an unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) that impacts the public interest; (4) injury to plaintiff in his or her business or property; and (5) causation. *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 719 P.2d 531, 533 (Wash. 1986).

Plaintiff conclusorily states that "LPS was and is engaged in numerous unfair and deceptive acts in order to increase their profits . . . [and] speed along the foreclosure sale and benefit the other defendants to the detriment of Ms. Bain . . . rather than acting in conformity with the DTA."[6] (Resp. 21 (Dkt. No. 48).) Reading her brief as liberally as possible, Plaintiff believes that LPS was giving "phony 'officer' titles to employees . . . so that they can execute documents on [IndyMac and MERS]'s behalf giving the appearance of actual legal authority when in fact, Defendant LPS' employees are simply pushing paper in order to expedite the foreclosure of an individual's home." (Resp. 8 (Dkt. No. 48).) Whether the conduct constitutes an unfair or deceptive act can be decided by this court as a question of law. *Leingang v. Pierce County Med. Bureau, Inc.*, 930 P.2d 288, 297 (Wash. 1997).

The Court cannot find that LPS's use of the titles "vice president" and "assistant vice president" of MERS and IndyMac, pursuant to express contracts, was deceptive within the meaning of the CPA. First, LPS did not commit a "knowing failure to reveal something of

---

[6] To the extent that Plaintiff is alleging that a violation of the DTA necessarily shoehorns her complaint into a violation of the CPA, this claim fails because the Court has found that Plaintiff failed to allege that LPS has any fiduciary duty under the DTA.

ORDER
PAGE - 9

material importance," because Plaintiff has not established materiality. *Indoor Billboard/Washington, Inc. v. Integra Telecom of Wash., Inc.*, 170 P.3d 10, 18 (Wash. 2007). Plaintiff has articulated no theory, and cited no cases, that would demonstrate that letters "VP" or "AVP" next to the signatures were all material to the foreclosure process on Plaintiff's home. Moreover, LPS did not commit an "affirmative misrepresentation of fact," because of the simple fact that, for purposes of signing these papers, LPS misrepresented nothing: Allen and Hood *did* bear the titles that they used. The employees' use of the titles was expressly authorized by contracts with IndyMac[7] and MERS. Plaintiff admits that lists of LPS employees who are granted the power to sign documents on behalf of these entities are "attached to publicly available documents regularly." (Resp. 14 (Dkt. No. 48).) LPS openly and lawfully allows its employees to sign on behalf of its clients, pursuant to contract—which is the essence of ordinary agency action everywhere. There is simply nothing deceptive about using an agent to execute a document, and this practice is commonplace in deed of trust actions. *See, e.g.*, *Russell v. Lundberg*, 120 P.3d 541, 544 (Utah Ct. App. 2005) ("[I]t appears to be accepted practice for [deed of trust] trustees to use third parties to perform foreclosure activities"); *Buse*, 2009 WL 1543994, at *2 (citing cases).

### F. Final Observation

The Court has not yet addressed the heart of Plaintiff's argument, which is that *no one* could initiate a foreclosure of Ms. Bain's loan, because no party has yet demonstrated the location or existence of the promissory note that established the original deed of trust. (*See* Resp. 16 (Dkt. No. 48).) That note was originally held by IndyMac Bank, FSB; after the bank

---

[7] Plaintiff also asserts that, when IndyMac was placed into receivership, and the FDIC created IndyMac Federal Bank, Hood had no authority under the contract to sign for IndyMac, because the *specific named* entity no longer existed. (Resp. 8 (Dkt. No. 48).) But Plaintiff has not coherently explained why the change in ownership gave Allen's signature "the capacity to deceive a substantial portion of the public." *Indoor Billboard*, 170 P.3d at 19 (Wash. 2007). There is no material issue of fact here.

ORDER
PAGE - 10

1  failed, the FDIC assumed all rights, titles, powers, privileges, and operations of the failed
2  institution. (Notice of Removal 2 (Dkt. No. 1).) The FDIC then created a new institution,
3  IndyMac Federal Bank, FSB, to which it transferred "all of the insured deposits and
4  substantially all of the assets of the failed institution." (*Id.*) The FDIC is now operating
5  IndyMac Federal Bank. (*Id.*) Plaintiff apparently argues that, because no one has affirmatively
6  produced evidence that the note is in possession of IndyMac Federal Bank, she was entitled to
7  cease making payments on her mortgage altogether, "no matter how delinquent she might have
8  been on her payments." (Resp. 16 (Dkt. No. 48).)

9  The Court need not tackle this argument today, because Plaintiff has not alleged any
10 statute or common law principle that would allow her to proceed against *LPS particularly* on
11 this theory. Neither common-law outrage, nor the CPA, nor the DTA—which are the only laws
12 alleged—establish liability for this particular Defendant under these circumstances.

**IV. CONCLUSION**

For the foregoing reasons, LPS's Motion for Summary Judgment (Dkt. No. 73) is GRANTED.

DATED this 11th day of March, 2010.

/s/ John C. Coughenour

John C. Coughenour
UNITED STATES DISTRICT JUDGE

ORDER
PAGE - 11